UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CHRISTOPHER R. BAKER,

               Plaintiff,                     CIVIL ACTION NO. 08-15216

           v.                          DISTRICT JUDGE DAVID M. LAWSON

COMMISSIONER OF                MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

               Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

**I.**     **PROCEDURAL HISTORY**

    *A.*     *Proceedings in this Court*

       On December 18, 2008, Plaintiff Christopher Baker (Plaintiff) filed the instant suit (Dkt.

1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to

the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's

claim for a period of disability and Supplemental Security Income benefits (Dkt. 3). This matter

is currently before the Court on cross-motions for summary judgment (Dkt. 14, 17).

    *B.*     *Administrative Proceedings*

       Plaintiff filed the instant claims on September 22, 2005, alleging disability beginning

May 1, 1996 (Tr. 15). The claim was initially disapproved by the Commissioner on January 23,

2006 (Tr. 38). Plaintiff requested a hearing and on June 20, 2008, Plaintiff appeared with a non-

attorney representative before Administrative Law Judge (ALJ) Michael D. Quayle, who

considered the case *de novo*.  In a decision dated July 15, 2008, the ALJ found that Plaintiff was

not disabled (Tr. 12).  Plaintiff requested a review of this decision on July 23, 2008 (Tr. 10).  The

ALJ's decision became the final decision of the Commissioner when, after the review of

additional exhibits[1] (AC-1, Tr. 5, 481-484), the Appeals Council, on October 14, 2008, denied

Plaintiff's request for review (Tr. 6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th

Cir. 2004).

In light of the entire record in this case, I find that substantial evidence supports the

Commissioner's determination that Plaintiff is not disabled.  Accordingly, it is

**RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's

motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

## II.    STATEMENT OF FACTS

### A.    *ALJ Findings*

Plaintiff was 24 years of age at the time of the most recent administrative hearing (Tr.

20).  The ALJ first found that Plaintiff had no past relevant work history (Tr. 20).  The ALJ then

applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff

had not engaged in substantial gainful activity since September 22, 2005, his disability

application date (Tr. 17).  At step two, the ALJ found that Plaintiff had the following "severe"

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

impairments: autism and history of an affective disorder. *Id*. At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. *Id*. At step four, the ALJ found that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels, with the following non-exertional limitations: unskilled work involving brief, infrequent and superficial contact with the public, no climbing ladders, ropes or scaffolds, and no exposure to hazards (machinery, heights, etc.). *Id*. At step five, the ALJ denied Plaintiff benefits because the ALJ found that Plaintiff could perform a significant number of jobs available in the national economy, such as: bench assembly (4,200 jobs available locally), packager (2,400 jobs available locally) and sorter (2,700 jobs available locally) (Tr. at 21).

**B.    Administrative Record**

**1.    Plaintiff's Testimony and Statements**

Plaintiff testified that he completed a high school education and some college courses, obtaining an associate's degree in accounting (Tr. 79-80, 488). Plaintiff testified that he was unable to perform a full-time job because he was a "slow learner" (Tr. 491). Plaintiff stated that the only medication he used was for acne (Tr. 491). Plaintiff indicated that, at the time of the hearing, he worked at the library for two days a month as a bookkeeper; he reconciled checking accounts (Tr. 489). He also indicated that he was a graduate assistant for Dale Carnegie in 2006 (Tr. 490). Plaintiff testified that he had a driver's license, but that he did not drive (Tr. 489). Plaintiff indicated that he was involved in the "On My Own Program" (Tr. 496-97). Plaintiff testified that, on the previous day, he worked at the library, went home to take care of his dog, ate dinner, played video games, and watched Netflix shows with his parents (Tr. 492). On a

more typical day, Plaintiff indicated that he was a social member for a disability living program and did some activities with them; he took care of his dog; he did some job searches; and he went to baseball games with his dad (Tr. 493).

In forms submitted to the Agency, Plaintiff's mother indicated that Plaintiff was able to dress himself, ate breakfast, went to school three to four days a week, did homework, watched television, played video games, and used the computer (Tr. 92).  Plaintiff also fed the dog and took the dog out, prepared simple meals, did laundry, picked up the mail, cleaned his room, and set the table (Tr. 93).  Plaintiff's mother indicated that Plaintiff could not perform chores that required "motor planning" such as ironing or problem solving such as doing repairs (Tr. 94).  Plaintiff walked, rode in a car, and used public transportation when he traveled (Tr. 95).  He shopped for groceries, paid bills, and counted change (Tr. 95).  Plaintiff's mother indicated that Plaintiff's hobbies included playing video games, watching television and movies, following sports teams, and using the internet; she indicated that Plaintiff did these activities on a daily basis and he did "fine" (Tr. 96).  Plaintiff attended events with the family, went to school, attended monthly autism meetings, attended sporting events, and attended medical appointments (Tr. 96).

Plaintiff attended Riverview School, a post-secondary school, from September 2000 to June 2002 (Tr. 80, 109-180).  Evaluation sheets reported that Plaintiff made consistent progress or mastered various objectives (Tr. 117-19, 121-23, 125-27, 129-31, 139-42, 147-51, 154-56, 158-59, 161-63, 165-67, 175-78).

On November 27, 2002, G. Christopher Popp, M.D., opined that Plaintiff must attend Minnesota Life College to mitigate the impact that autism has on his ability to perform normal

life skills. (Tr. 429).  Plaintiff attended Minnesota Life College in 2003. (Tr. 181-263).

Assessment reports indicated that Plaintiff had reached an acceptable standard in several habits

and attitudes and needed improvement in some habits and attitudes (Tr. 186-89).  An assessment

form indicated that Plaintiff was able to prepare food independently 75 percent of the time; do

laundry independently 25 percent of the time; shop for groceries independently 75 percent of the

time; and maintain a clean household independently 25 percent of the time (Tr. 199-200, 223-

24).  In August 2003, it was noted that Plaintiff was doing well and felt confident in his abilities

to handle class and transportation (Tr. 227).  In January 2004, Plaintiff had a long list of things

that bothered him and decided to leave the Minnesota Life College program and go home (Tr.

251, 257).

### 2.   Medical Evidence

On December 3, 2003, Plaintiff was admitted to the Emergency Department with

depressive symptoms (Tr. 306).  Plaintiff reported that he was stressed in many situations, was

crying a lot, saw violent things, felt hostility, and had visual hallucinations (Tr. 306).  Plaintiff's

mood was depressed, his affect flat, and his speech decreased tone and rate (Tr. 307).  A

psychometric consultation was provided (Tr. 303).  Plaintiff was discharged with a diagnosis of

depressive disorder, had a Global Assessment of Functioning (GAF)[2] score of 20, and was

prescribed Zyprexa and Lexapro (Tr. 305, 307).

---

[2]   The GAF score is "a subjective determination that represents the clinician's judgment of the individual's
overall level of functioning.  It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self
or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of
death).  A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at
times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations,
judgment, thinking or mood.  A GAF of 41 to 50 means that the patient has serious symptoms . . . OR any serious
impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job).  A GAF rating of
51 to 60 signals the existence of moderate difficulty in social or occupational functioning."  *White v. Comm'r of Soc.
Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

On December 16, 2003, Michael Saribalas, D.O., noted that Plaintiff had some periods in which he felt drowsy and tired but that had subsided, and continued to have some mild irritability and dysphoria (Tr. 400). Plaintiff's mood was dysphoric, his affect flat, his speech decreased tone and rate, insight and judgment poor, he was continued on Zyprexa and his Lexapro was increased (Tr. 400). Plaintiff underwent a Psychiatric Evaluation on February 6, 2004, with Preeti Venkataraman, M.D. (Tr. 394-98). Plaintiff's energy was down, he could not focus, increased distractibility, paranoid, and hallucinations (Tr. 394). Plaintiff was diagnosed with Major Depressive Disorder and assigned a GAF of 50 (Tr. 398). On subsequent visits, Plaintiff was stable and had a GAF ranging from 45 to 60 (Tr. 384-92). On September 1, 2004, Dr. Venkataraman wrote a letter noting that Plaintiff met the criterion for the diagnosis of major depressive disorder and that he was on Lexapro with "excellent response" (Tr. 388).

Plaintiff was treated by James C. Schmidt, Ph.D., once a week from January 27, 2004, through July 11, 2005, where he discussed symptoms of depression, anxiety, and difficulty with social interaction (Tr. 319-32). On May 23, 2005, G. Christopher Popp, M.D., stated that Plaintiff is "disabled" and unable to personally provide his own transportation (Tr. 334). He indicated that Plaintiff would benefit from public-assisted transportation for the disabled (Tr. 334).

On December 17, 2005, Plaintiff was evaluated by Benjamin Dunkley, D.O. (Tr. 341). Plaintiff's autism had some social effects and affects his coordination and dexterity (Tr. 341). Dr. Dunkley opined that Plaintiff's main problem is mild cognitive disorder such as multi-functioning, as well as some coordination issues, such as an inability to ride a bicycle (Tr. 342).

On December 22, 2005, Rokeya Muahimeen, M.D., examined Plaintiff at the request of the state agency (Tr. 344-46).  Plaintiff indicated that, although he had poor motor skills and was shy in high school, he graduated with honors (Tr. 344).  Plaintiff indicated that he was not too depressed, but he lacked confidence (Tr. 344).  Plaintiff indicated that he was taking two classes, three to four days a week, and he took the bus to school (Tr. 344-45).  Plaintiff reported that he went bowling with his parents once a week, helped his mother with the grocery shopping, took care of the dog, took out the trash, cooked one time a week, cleaned his room, and took care of his personal hygiene without any reminders (Tr. 345).

On mental status examination, Dr. Muahimeen reported that Plaintiff had good contact with reality, his self-esteem and motor activity seemed down, he spoke in a low and monotonous voice, and he looked depressed, anxious, and distant (Tr. 345).  Plaintiff described his memory as being "excellent;" Dr. Muahimeen noted that Plaintiff was able to repeat several numbers forward and backward and he was able to remember three objects after three minutes (Tr. 345).  Plaintiff was able to do serial 7s (Tr. 346).  Dr. Muahimeen diagnosed dysthymia, history of autism, and ruled out paranoid personality disorder (Tr. 346).  She assigned a GAF score of between 55 and 60.  *Id.*

Dr. Popp saw Plaintiff in December 2005 and January 2006 for routine ailments (Tr. 422-23, 425).  During his examinations, Dr. Popp indicated that Plaintiff was alert, cooperative, not anxious, and was not in acute distress (Tr. 422-23, 425).  Dr. Popp subsequently saw Plaintiff for similar minor complaints and reported similar findings (Tr. 413, 418, 420).

In a Psychiatric Review Technique dated January 14, 2006, Leonard Balunas, Ph.D., opined that Plaintiff had a mild restriction of activities of daily living and difficulty in

-7-

maintaining concentration, persistence, or pace, and a moderate difficulty in maintaining social functioning (Tr. 347-60).  In a Mental Residual Functional Capacity Assessment, Dr. Balunas opined that Plaintiff had a moderate limitation in the ability to interact appropriately with the general public (Tr. 363-64).  In a Physical Residual Functional Capacity Assessment dated January 18, 2006, Mary Lewis, enhanced examiner, opined that Plaintiff could never climb ladders, ropes, and scaffolds, and should avoid all exposure to hazards (Tr. 367-74).

Plaintiff began treatment with Sally Bloch, Ph.D., on April 7, 2006 (Tr. 471-75). Plaintiff was treated every two weeks for major depressive disorder (Tr. 431-69).  On May 27, 2008, Dr. Bloch wrote a letter noting that her area of specialty is autism spectrum disorders (Tr. 479).  Dr. Bloch noted that Plaintiff has significant difficulties forming and maintaining relationships due to fundamental deficits in "reading" other people as well as difficulty using his own body language to communicate to others (Tr. 479).  Dr. Bloch opined that Plaintiff requires considerable time and repetition to apply and generalize information in any meaningful way, and that he is apt to have difficulty distinguishing between relevant and irrelevant stimuli in complex, real-world environments (Tr. 479).  Dr. Bloch opined that Plaintiff has difficulty simultaneously processing multiple stimuli at once, needs additional time to process information and respond, and takes 5 to 15 seconds to formulate a response to even simple and straightforward questions (Tr. 479).  Fine and gross motor responsiveness and reaction time both impress as slowed, and he moves slowly and with an awkward gait (Tr. 479).  Dr. Bloch noted that these challenges have lead to bouts of severe depression – but that Plaintiff has made "significant gains in this area" (Tr. 480).  However; Dr. Bloch also noted that Plaintiff "remains

vulnerable to depression" (Tr. 480). Dr. Bloch opined that these challenges and deficits "significantly impact" Plaintiff's ability to find employment and live independently (Tr. 480).

### 3. Vocational Expert

The VE testified that an individual with limitations consistent with Dr. Bloch's finding could not perform any jobs in the national economy (Tr. 495). The VE next stated that an individual who could perform unskilled work with brief, infrequent and superficial contact with the public, coworkers, and supervisors, who must avoid exposure to hazards, machinery, and heights, and who must avoid ladders, ropes, and scaffolds, could perform unskilled, simple, repetitive, no production standards jobs, such as: bench assembly (4,200 jobs), sorter (2,700 jobs) and packer (2,400 jobs) (Tr. 497-98).

### C. Plaintiff's Claims of Error

Plaintiff contends that the ALJ's decision is not based upon substantial evidence and should not be affirmed, but rather remanded. Plaintiff raises three main arguments on appeal, namely: 1) that the ALJ failed to give good reasons for rejecting the opinions of Plaintiff's treating physicians, in particular, the opinions of Drs. Popp and Bloch; 2) that the ALJ failed to properly evaluate Plaintiff's mental functioning, including the effect of his autism on mental functioning; and 3) that the ALJ made a conclusory and unsupported credibility finding.

## III. DISCUSSION

### A. Standard of Review

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493

U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes

an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally

to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this

administrative review process, the claimant may file an action in federal district court.  *Id.*;

*Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

      This Court has original jurisdiction to review the Commissioner's final administrative

decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the

court "must affirm the Commissioner's conclusions absent a determination that the

Commissioner has failed to apply the correct legal standard or has made findings of fact

unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d

591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In

deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de

novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499

F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of

course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses,

including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir.

2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required

to accept a claimant's subjective complaints and may...consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542

(6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great

weight, particularly since the ALJ is charged with observing the claimant's demeanor and

credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a

certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir.

2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B.      Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."  *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).  There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant

-13-

numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." Soc.Sec.R. 9602p, 1996 WL 374188, *5 (1996). The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees her "with a frequency consistent

-14-

with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition."  20 C.F.R. § 404.1502.  "Although the ALJ is not bound by a treating physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'" *Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted).  "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits."  *Smith v. Comm'r of Social Security*, 482 F.3d 873, 875 (6th Cir. 2007).  "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003).  The findings of a psychologist are relevant in establishing the existence and severity of a mental impairment, and a psychologist's evaluation of the disabling nature of a mental impairment need not be given less weight than that of a psychiatrist.  *Crum v. Sullivan*, 921 F.2d 642 (6th Cir. 1990).

  **C.**  ***Analysis and Conclusions***

    **1.**  **Drs. Bloch & Popp**

    Plaintiff first contends that the ALJ's RFC finding was not supported by substantial evidence because the ALJ did not properly weigh the opinions of Drs. Bloch and Popp.  *See* Plaintiff's Br. at 9-12. Contrary to Plaintiff's argument, the ALJ considered these opinions and properly gave them little weight.  A treating physician's opinion is entitled to controlling weight when it is well supported by the objective evidence and is consistent with the other substantial evidence of the record.  20 C.F.R. § 416.927(d)(2); *Walters v. Comm'r,* 127 F.3d 525, 530 (6th Cir. 1997).  As Plaintiff points out, Dr. Bloch found that Plaintiff had moderate, marked, or extreme limitations in most mental work-related areas (Tr. 476-80).  Plaintiff argues that Dr.

Bloch's opinion was entitled to controlling weight because Dr. Bloch saw Plaintiff once every two weeks, specialized in autism disorders, and was supported by her treatment notes. *See* Plaintiff's Br. at 10.

Defendant responds that, although Dr. Bloch saw Plaintiff frequently and was a specialist, her opinion was not entitled to controlling or significant weight. Defendant points out that the ALJ properly noted that Dr. Bloch's opinion was not well supported and was inconsistent with the other evidence in the record (Tr. 20). Defendant's arguments are well taken. Dr. Bloch provided no explanation as to how she formed her opinion (Tr. 478). Dr. Bloch's progress notes included no extensive mental status examinations or psychological tests (Tr. 413-75). Moreover, Dr. Bloch's progress notes failed to show that Plaintiff was as limited as Dr. Bloch opined. Dr. Bloch's notes prior to her opinion actually showed that Plaintiff's condition had been improving and stabilizing. On July 25, 2007, Dr. Bloch indicated that Plaintiff maintained a pattern of effective stability and was working toward social support (Tr. 442). On October 8, 2007, Dr. Bloch noted that Plaintiff exhibited good application of problem solving strategies (Tr. 439). On January 25, 2008, Dr. Bloch noted that Plaintiff continued to develop more awareness into his relationships and practiced applying his skills (Tr. 434). On February 19, 2008, Dr. Bloch indicated that Plaintiff had increased awareness of personal strengths (Tr. 433). On May 8, 2008, Dr. Bloch noted that Plaintiff continued to move towards increasing independence to whatever extent possible (Tr. 431). Given Dr. Bloch's own progress notes, the ALJ reasonably concluded that her opinion was not entitled to controlling or significant weight. In addition, the ALJ reasonably gave little weight to Dr. Bloch's opinion because it was inconsistent with the other reliable evidence in the record. As explained above,

the ALJ reasonably concluded that the evidence, as a whole, supported mild restriction in

activities of daily living, moderate difficulties in social functioning, and mild difficulties in

concentration, persistence or pace (Tr. 17-18).  Based on the record as a whole, the ALJ

reasonably gave Dr. Bloch's opinion little weight.

Similarly, the ALJ properly weighed Dr. Popp's opinion.  On May 23, 2005, Dr. Popp –

Plaintiff's family physician – indicated in correspondence that Plaintiff was "disabled" and

unable to personally provide his own transportation (Tr. 334).  He indicated that Plaintiff would

benefit from public-assisted transportation for the disabled (Tr. 334).  As an initial matter, Dr.

Popp's statement that Plaintiff was "disabled" is not entitled to any significant weight because

the issue of whether or not Plaintiff could perform work or is disabled is an issue reserved only

to the Commissioner.  20 C.F.R. § 416.927(e)(1) (Commissioner is responsible for deciding the

ultimate issue of disability and a statement by a medical source that you are "disabled" or

"unable to work" does not mean that claimant will be found disabled); Social Security Ruling

96-5p, 61 Fed. Reg. 34471, 34472 (1996) (the issue of whether an individual is "disabled" under

the Act is an administrative finding reserved to the Commissioner).

Furthermore, it is not even clear that Dr. Popp's letter meant that Plaintiff was "disabled"

from performing all work.  The context of the Dr. Popp's letter suggested that Plaintiff was

unable to provide for his own transportation and that he would benefit from public-assisted

transportation for the disabled (Tr. 334).  This letter does not appear to address Plaintiff's ability

to work.

In any event, even if Dr. Popp's correspondence is interpreted as suggesting that Plaintiff

is unable to perform any work, Dr. Popp's opinion was not entitled to any significant weight because it was not well-supported and inconsistent with the other reliable evidence in the record (Tr. 20). Dr. Popp saw Plaintiff for various complaints of cough, fever, and earache, and he reported no significant clinical abnormalities during his examinations (Tr. 413, 415-16, 418, 420, 422-23). Although Dr. Popp had seen Plaintiff for a few years as Plaintiff points out, Dr. Popp's findings from his examinations do not support an opinion of disability. Thus, the ALJ properly gave Dr. Popp's opinion little weight.

## 2.    Listed Impairments

Plaintiff next argues that the ALJ erred by not providing more articulation with respect to his finding that his impairments did not meet or equal § 12.10 of the Listing of Impairments. *See* Plaintiff's Br. at 12-13. However, Plaintiff has the burden of establishing an impairment of listing-level severity. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

Defendant responds that the ALJ adequately discussed the listing and Plaintiff has not pointed to any evidence to support his argument that this case be remanded for further articulation. Plaintiff argues that, even though the ALJ mentioned listing 12.10, he did not fully consider the listing. *See* Plaintiff's Br. at 12. Plaintiff indicates that, although the ALJ discussed the paragraph "B" criteria, he did not discuss the paragraph "A" criteria. Defendant avers that Paragraph "A" criteria deals with whether the diagnosis is present and the paragraph "B" criteria deals with the severity of the impairment. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00.

-18-

Defendant's argument is well taken.  Here, the ALJ found that Plaintiff had "severe" autism (Tr. 17).  Thus, the relevant inquiry at the next step was to determine the severity of the impairment.  Plaintiff's contention that this case should be remanded for further articulation of the paragraph "A" criteria is unwarranted.  Thus, Plaintiff is not entitled to a remand on this issue.

### 3.    Credibility Findings

Finally, Plaintiff argues that the ALJ committed reversible error when he found his allegations of a disabling condition not to be credible.  *See* Plaintiff's Br. at 19-20.  An ALJ's credibility finding in particular is entitled to considerable deference and reviewing courts do not generally make a *de novo* credibility finding.  *See Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001) ("The ALJ's findings as to a claimant's credibility are entitled to deference because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints.").  Here, the ALJ noted that the objective evidence did not support Plaintiff's allegations of a disabling condition (Tr. 19).  The ALJ further indicated that Plaintiff's condition improved with conservative treatment (Tr. 19).  And, finally, the ALJ noted that Plaintiff's daily activities undermined his allegations of a disabling condition (Tr. 19).  Plaintiff argues that the ALJ's credibility finding was flawed because he should have given more weight to the opinions of his treating physicians.  However, as explained above, the ALJ properly gave those opinions little weight.

While Plaintiff disagrees with the manner in which the ALJ weighed the evidence, it is not for the Court to decide whether substantial evidence supports Plaintiff's position; rather, this Court determines whether substantial evidence supports the ALJ's findings.  This substantial evidence standard presupposes the existence of a zone of choice in which the ALJ can properly

rule either way, without judicial interference. *See Mullen,* 800 F.2d at 545 ("The substantial evidence standard allows considerable latitude to administrative decision makers.  It presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts.").  Although Plaintiff suggests that the evidence should have been weighed differently, that does not undermine the reasonableness of the ALJ's decision.  *See Jones*, 336 F.3d at 477 ("[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ.").  Here, the ALJ reviewed  the record and reasonably concluded that Plaintiff could perform a range of work.  The ALJ propounded a well-supported hypothetical question to the vocational expert incorporating Plaintiff's age, education, work experience, and work-related limitations, and the vocational expert identified a significant number of jobs (Tr. 498).  The vocational expert's uncontradicted testimony constitutes substantial evidence supporting the ALJ's decision that Plaintiff was not disabled because he could perform a significant number of other jobs the national economy.

In sum, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## IV.    RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED** that Defendant's motion for summary judgment be **GRANTED** and that the findings of the Commissioner be **AFFIRMED**.

-20-

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

S/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated:  December 31, 2009

<u>Certificate of Service</u>

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, December 31, 2009, by electronic and/or ordinary mail.

S/Barbara M. Radke
Judicial Assistant, (313) 234-5540